IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:16-cv-00095-GCM
(3:12-cr-00239-GCM-DCK-18)

| | |
|---|---|
| WILLIAM BROWN, )<br>)<br>Petitioner, )<br>)<br>v. )<br>)<br>UNITED STATES OF AMERICA, )<br>)<br>Respondent. )<br>) | **ORDER** |

**THIS MATTER** is before the Court on an initial review of Petitioner's *pro se* Motion to Vacate, Set Aside or Correct his Sentence which he filed pursuant to 28 U.S.C. § 2255. For the reasons that follow, Petitioner's § 2255 Motion will be dismissed.

I. BACKGROUND

On April 18, 2013, Petitioner and twenty-five others were charged in a wide-ranging RICO conspiracy which involved mortgage, wire, investment, and securities fraud, all in violation of 18 U.S.C § 1962(d) (Count 1). Petitioner and sixteen others were also charged in a separate count in the indictment with mortgage fraud and aiding and abetting the same, in violation of 18 U.S.C. §§ 1344 and 2.

On October 1, 2013, Petitioner entered into a plea agreement in which he agreed to plead guilty to Count 1 in exchange for the Government's agreement to dismiss Count 2, and a "Factual Basis" was filed contemporaneously with the plea agreement. (3:12-cv-00239, Doc. No. 366: Plea Agreement; Doc. No. 367: Factual Basis). On October, 4, 2013, Petitioner appeared

before U.S. Magistrate Judge David S. Cayer for his Plea and Rule 11 hearing and he was placed under oath. The elements of the RICO conspiracy charged in Count 1 were explained to Petitioner by the Government along with the potential range of penalties and Petitioner averred that he understood the charge and the possible sentence he faced upon conviction. In particular, Petitioner acknowledged that he was guilty of acts of wire fraud and money laundering, and that those crimes served as the predicate acts to support his conviction for the RICO conspiracy.

Petitioner averrred that he had discussed possible defenses to the RICO charge with his attorney and that he was agreeing to waive his right to contest the charge at trial. Finally, Petitioner admitted that he was in fact guilty of the conduct charged in Count 1, and that he was satisfied with the services of his attorney and that no one had promised him any particular sentence or coerced or threatened him into pleading guilty. Petitioner's answers to the court's questions were presented to him in writing to review and Petitioner agreed that his answers were true and his plea was accepted after the court found that it was knowing and voluntary. (Id., Doc. No. 376: Acceptance and Entry of Guilty Plea).

Petitioner's presentence report included the complete Factual Basis that was filed along with his plea agreement. The Factual Basis provides as follows:

> 6. Defendant William Brown was a promoter for the Enterprise. Brown, along with Ralph Johnson, exercised control over Pinnacle Investments for the Enterprise.
>
> 7. The mortgage fraud scheme conducted by the Enterprise generally operated in the following manner:
>
>> a. The Enterprise, generally through a promoter, would agree with a builder or owner to purchase a property at a set price (the "true price");

  b. The Enterprise would then arrange for a buyer to purchase the property at an inflated price, which was usually between $200,000 and $800,000 above the true price;

  c. In most circumstances, the buyer would agree to purchase the property in his or her own name and sign whatever documents were necessary in exchange for a hidden kickback;

  d. The builder would sell the property at the inflated price; and

  e. The lender would make a mortgage loan on the basis of the inflated price;

  f. The difference between the inflated price and the true price would be extracted at closing and distributed among members of the Enterprise.

8. To induce lenders to make mortgage loans, some participants of the Enterprise caused loan packages to be prepared and submitted to lenders that contained false and fraudulent representations and half-truths, and omitted or concealed material facts. Indeed, some loan packages at various times during the course of the scheme:

  a. Failed to disclose the true, agreed-upon price;

  b. Misrepresented the buyer's intent to occupy the home as their primary residence;

  c. Misrepresented the buyer's income or assets;

  d. Misrepresented the buyer's place of employment; and/or

  e. Contained false or forged documents.

9. The HUD-1 Settlement Statements associated with such loan packages and real estate closings contained false and fraudulent representations, half-truths, and omitted or concealed material facts. Indeed, some HUD-1 Settlement Statements at various times during the course of the scheme:

  a. Failed to disclose the true agreed upon price;

  b. Falsely stated that the buyer had provided cash at closing when the buyer had not provided cash at closing or would be reimbursed for same;

    c.    Fraudulently listed payments to entities controlled by members of the Enterprise as though such payments were to entities that had financed the building of or had assisted the builder in building the house;

    d.    Failed to accurately disclose the true disbursement of the mortgage loan proceeds; and /or

    e.    Failed to disclose that the buyer would directly or indirectly receive a portion of the mortgage loan proceeds.

10.    The closing attorneys received into their trust accounts the proceeds of the fraud and distributed such proceeds to members of the Enterprise.

    a.  Typically, the Enterprise caused the closing attorneys to distribute such proceeds to bank accounts in the names of entities controlled by members of the Enterprise in order to conceal the ownership and control of such mortgage fraud proceeds, as well as to disguise the true recipients of such funds; and

    b.  When the proceeds of the mortgage fraud were distributed to the buyers as kickbacks, the members of the Enterprise usually would first funnel the kickback through an entity controlled by the Enterprise to conceal the true source of the kickback, as well as to conceal the fact that the buyer often would receive, own, and control some of the proceeds of the fraud.

    c.  The lender would make a mortgage loan on the basis of the inflated price.

    d.  The difference between the inflated price and the true price would be extracted at closing and distributed among members of the cell.

11.    For example, Brown served as a promoter for the Enterprise's fraudulent purchase of 1021 B West Fourth Street, Charlotte, North Carolina, helping to arrange the sale and bring the necessary parties together. The HUD-1 then fraudulently reflected a payment of $58,793.04 to Pinnacle Investments purportedly as a Design Fee, when, in truth and fact, the payment was a kickback to Brown and Johnson for their role in the fraud.

12.    Brown served as a promoter and buyer for the Enterprise's fraudulent

purchase of 1021A West Fourth Street, Charlotte, North Carolina, helping to arrange the sale and bring the necessary parties together. The HUD-1 then fraudulently reflected a payment of
$59,290.00 to Pinnacle Investments purportedly as a Design Fee, when, in truth and fact, the payment was a kickback to Brown for his role in the fraud.

13.     Brown also served as a promoter and seller for the Enterprise's flip of 1021A West Fourth Street, Charlotte, North Carolina, in the name of D.N., helping to arrange the sale and bring the necessary parties together. For his role in the fraud, Brown received nearly $200,000 which Brown arranged to be paid to Pinnacle Investments.

14.     Brown served as a promoter for the Enterprise's fraudulent purchase of 1023B West Fourth Street, Charlotte, North Carolina, helping to arrange the sale and bring the necessary parties together. The HUD-1 then fraudulently reflected a payment of
$102,200 as a Payoff to Pinnacle Investments, LLC and a payment of $92,309 as a Payment on Account, when, in truth and fact, the payments were kickback to Brown and Johnson for their roles in the fraud.

15.     In addition to the Factual Basis, it is noted that investigation reveals that Mr. Brown was involved in eight properties and 13 fraudulent loans with actual loss amounts (loan amounts minus foreclosure sale proceeds) of over $2,931,105.36. The properties and losses involved are as follows:

    425 Annaberg Lane, Monroe, NC 3025     Actual loss unknown
    Sharon Road, Charlotte, NC $384,700.00
    14616 Northgreen, Huntersville, NC $336,892.03
    505 East 6th Street #1501, Charlotte, NC    $503,013.33
    1021B W. 4th Street, Charlotte, NC $547,000.00
    1021A W. 4th Street, Charlotte, NC $530,000.00
    1048 McLaughlin Drive, Charlotte, NC    $ 55,500.00
    1023B W. 4th Street, Charlotte, NC $574,000.00

(Id., Doc. No. 693: Presentence Report).

On February 18, 2015, Petitioner appeared with counsel for his sentencing hearing and at the outset the Court reviewed the Rule 11 proceedings. Petitioner acknowledged that he had entered into the plea agreement with the Government and that he understood the questions posed by Judge Cayer during the hearing and he again admitted that he was guilty of the conduct

5

charged in the RICO conspiracy. Based on these representations and the Rule 11 proceedings, the Court found the guilty plea was knowing and voluntary and it was reaffirmed. Petitioner then stipulated to the offense conduct contained in the Factual Basis and the Court found this information supported the entry of the guilty plea and a verdict of guilty was entered. Petitioner was sentenced to a term of 48-months' imprisonment and one year of supervised release. Petitioner did not appeal. (Id., Doc. No. 891: Judgment).

In this collateral proceeding, Petitioner raises claims of ineffective assistance of counsel and a claim that he is actually innocent of the RICO conspiracy to which he pleaded guilty.

## II.     STANDARD OF REVIEW

Pursuant to Rule 4(b) of the Rules Governing Section 2255 Proceedings, sentencing courts are directed to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings" in order to determine whether a petitioner is entitled to any relief. The Court has considered the record in this matter and applicable authority and concludes that this matter can be resolved without an evidentiary hearing. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

## III.    DISCUSSION

A.     Ineffective assistance of counsel

The Sixth Amendment to the U.S. Constitution guarantees that in all criminal prosecutions, the accused has the right to the effective assistance of counsel to assist in his defense. U.S. Const. amend. VI. In order to prevail on a claim of ineffective assistance of counsel, a petitioner must show that: (1) "counsel's representation fell below an objective standard of reasonableness," and (2) the deficient performance was prejudicial the defense.

6

Strickland v. Washington, 466 U.S. 668, 687-88 (1984). In measuring counsel's performance, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. . ." Id. at 689. A petitioner seeking post-conviction relief based on ineffective assistance of bears a "heavy burden in overcoming this presumption." Carpenter v. United States, 720 F.2d 546, 548 (8th Cir. 1983). Conclusory allegations do not overcome the presumption of competency. Id.

To demonstrate prejudice in the context of a guilty plea, a Petitioner must demonstrate "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985). Petitioner "bears the burden of proving Strickland prejudice." Fields v. Attorney Gen. of Md., 956 F.2d 1290, 1297 (4th Cir. 1992) (citing Hutchins v. Garrison, 724 F.2d 1425, 1430-31 (4th Cir. 1983), cert. denied, 464 U.S. 1065 (1984)). If Petitioner fails to meet this burden, "a reviewing court need not consider the performance prong." Fields, 956 F.2d at 1297 (citing Strickland, 466 U.S. at 697). In considering the prejudice prong of the analysis, the Court must not grant relief solely because Petitioner can show that, but for counsel's performance, the outcome of the proceeding would have been different. See Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998). Rather, the Court "can only grant relief under the second prong of Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'" Id. (quoting Lockhart v. Fretwell, 506 U.S. 364, 369 (1993)).

Petitioner contends in a purely blank fashion that his attorney provided ineffective assistance of counsel because he failed to properly investigate and prepare his case, and he failed to properly prepare with respect to his plea, sentencing, and "other matters relative to my

7

sentence and conviction." (3:16-cv-00095, Doc. No. 1 at 4). Petitioner does not cite any specific instances to support his claims and it is not the responsibility of this Court to mine the record in the hopes of identifying some deficiency.

However, even a cursory review of the record demonstrates that Petitioner's claims are without merit. The Court notes that Petitioner stated under oath during his Rule 11 hearing that he had discussed possible defenses with his attorney and that he was satisfied with the services of his attorney. In addition, he acknowledged that he reviewed the presentence report with his attorney. Moreover, this Court expressly noted during sentencing that Petitioner's counsel had prepared an outstanding sentencing memorandum that exceeded the quality of the majority of memoranda that had been filed in recent memory. (3:12-cr-00239, Doc. No. 27: Sentencing Tr. at 29). Petitioner's contentions in this proceeding are nothing more than a hollow attempt to challenge the voluntary nature of his guilty plea and the statements that he made under oath during his Rule 11 hearing and confirmed during his sentencing hearing. In other words, Petitioner's representations during his criminal case belie this late attempt to challenge his conviction or sentence under the guise of ineffective assistance of counsel.

It is well-settled that a petitioner is bound by his sworn statements that he makes during a properly conducted Rule 11 hearing and as this Court found during sentencing, and reaffirms herein, Petitioner's Rule 11 hearing was properly conducted therefore his present challenge must fail. See, e.g., Blackledge v. Allison, 431 U.S. 63, 73-74 (1977) ("For the representations of the defendant, his lawyer, and the prosecutor at such a hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity."); United

States v. Lemaster, 403 F.3d 216, 221 (4th Cir. 2005).

In sum, Petitioner's contentions of ineffective assistance of counsel are merely vague and conclusory statements that are wholly unsupported by the record; therefore Petitioner has failed to carry his burden of demonstrating any right to relief under Strickland. See United States v. Dyess, 730 F.3d 354, 359 (4th Cir. 2013) ("[V]ague and conclusory allegations contained in a § 2255 petition may be disposed of without further investigation by the District Court.") (quoting United States v. Thomas, 221 F.3d 330, 437 (3d Cir. 2000)).

B. Actual innocence

In his final claim, Petitioner contends that he is actually innocent of the RICO conspiracy, however this claim will be denied for the reasons previously given, namely, Petitioner admitted under oath that he was in fact guilty of the RICO conspiracy charge and he offers no evidence in this proceeding which could call that fact into question. As noted previously, Petitioner stipulated to the Factual Basis which this Court found was more than sufficient evidence to support a finding that Petitioner was in fact guilty of the RICO conspiracy.

And Petitioner's claim is particularly undermined by the statements he made while addressing the Court during sentencing in which he explained that the actions of his co-defendants, that is, "their encouragement, you know, does not excuse my actions and what I've done." (Sentencing Tr. at 27). In concluding his remarks, Petitioner explained that, although more than able, he did not invite a myriad number of family and friends because he did not want them to hear details of his crime: "And whatever the outcome of this hearing is today, Your Honor, there will be no punishment greater than me having to sit down and finally tell my mom, my sisters, my nephews, who all look up to me, what I - - what I've done." (Id. at 28).

## IV. CONCLUSION

Based on the foregoing, the Court finds that Petitioner's § 2255 motion is wholly conclusory and belied by the record and it therefore state claim for relief and it will be dismissed.

**IT IS, THEREFORE, ORDERED** that Petitioner's Motion to Vacate, Set Aside or Correct his Sentence under 28 U.S.C. § 2255 is **DISMISSED**. (Doc. No. 1).

**IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2255 Cases, the Court declines to issue a certificate of appealability as Petitioner has not made a substantial showing of a denial of a constitutional right. 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 474, 484 (2000) (holding that when relief is denied on procedural grounds, a petitioner must establish both that the correctness of the dispositive procedural ruling is debatable, and that the petition states a debatably valid claim of the denial of a constitutional right).

The Clerk is respectfully directed to close this civil case.

**SO ORDERED.**

Signed: March 10, 2016

Graham C. Mullen
United States District Judge